*386 KIRSCH, Judge,
concurring in part and dissenting in part.
[22] I fully concur in the decision to reverse the trial court’s grant of summary judgment with regard to the Kindred defendants, but I respectfully dissent form the decision to affirm the grant of summary judgment for Dr. Majid.
[23] The basis of my dissent is twofold:
[24] First and foremost, I think that there are material questions of fact regarding whether Dr. Majid breached the applicable standard of care in his treats ment of Geraldine Siner and whether such breach was a factor in the resultant damages. Second, I find it troubling that a single member of a Medical Review Panel can undermine the work of the panel of which he was a part by an ex parte and conclusory affidavit executed months after the fact without procedural safeguards.
[25] The affidavit of James R. Krueger, M.D. was signed more than eight months after the Medical Review Panel convened and heard the evidence presented by the parties and their counsel and nearly seven months after it rendered its unanimous opinion. In his affidavit, Dr. Krueger states that “Since rendering my panel opinion, I have had the opportunity to review the medical records of Geraldine Siner in greater detail.” Dr. Krueger does not state which medical records he reviewed. Thus, we do not know whether he reviewed all of her records, all of the records introduced at the hearing and presented to the panel, or records which were not introduced at the hearing. We do not know the nature of such medical records, nor whether they met the relevancy and authentication standards for admission into evidence. Indeed, we have no knowledge about “the medical records” that Dr. Krueger reviewed “in greater detail.”
[26] Similarly, we do not know the circumstances prompting Dr. Krueger’s further review. We do not know why, where or when it occurred, and we do not know who, if anyone, was present. We do not know how long Dr. Krueger spent reviewing the selected records “in greater detail.” We do not know whether Dr. Krueger drafted his affidavit or whether it was drafted by someone else.
All that we do know about Dr. Krueger’s opinion is that there is a contradiction between the opinion that Dr. Krueger rendered as a medical expert serving on the Medical Review Panel in this case and the one which he gave several months later. As a result, one of the three medical experts serving on the Medical Review Panel in this case had certain reservations about his opinion as a result of his later private review of certain of Ms. Siner’s medical records outside the purview of the Panel without the opportunity for authentication of the records or cross-examination.
[28] From my perspective, one member of a Medical Review Panel cannot undermine the statutorily-prescribed Medical Review Panel process. At most, there is simply a question of material fact arising from the Medical Review Panel Opinion on one hand stating unanimously that “the evidence supports the conclusion that the defendants failed to comply with the appropriate standard of care, and that their conduct may have been a factor of some resultant damages, but not the death of the patient” and Dr. Krueger’s later opinion that “Dr. Majid met the standard of care and did not cause any injury to Geraldine Siner in connection with CPAP application.” Had Dr. Krueger held his later opinion at the time that the Medical Review process was conducted and voted accordingly, the panel vote would have been two to one. To me, the fact that Dr. *387 Krueger issued a different opinion several months after the process is immaterial. The expert medical opinion arising from the Medical Review process remains that Dr. Majid “failed to comply with the appropriate standard of care, and that [his] conduct may have been a factor of some resultant damages, but not the death of the patient.”
[29] The second basis from my dissent rises from the fact that the Medical Review process was created by our General Assembly. That process is mandated in nearly all legal proceedings alleging medical malpractice. The process includes a number of mandated procedural and evi-dentiary safeguards ■ to protect the rights of all parties to the proceeding. That process should not be impeached or undermined months after it is concluded by an affidavit from a member of the panel issued without those procedural safeguards.